UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                          :
ELI WEISBLUM et al.,                                      :
                                                          :
                              Plaintiffs,                 :
                                                          :
            -v-                                           :
                                                          :
PROPHASE LABS, INC. et al.,                               :
                                                          :
                              Defendants.                 :
                                                          :
------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/20/2015
```

14-CV-3587 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiffs Eli Weisblum and James Loren Gibbs bring this putative consumer class action against Prophase Labs, Inc. ("Prophase") and its Chief Executive Officer, Theodore W. Karkus (together with Prophase, "Defendants"), alleging various federal and state claims arising out of their marketing and sale of Cold-EEZE cold remedy products ("Cold-EEZE"). At bottom, Plaintiffs allege that Defendants made false representations in marketing Cold-EEZE as effective in reducing the duration and severity of the common cold. Defendants move to dismiss the Amended Complaint (the "Complaint") for lack of personal jurisdiction, lack of standing, and failure to state a claim upon which relief may be granted. (Docket No. 34). For the reasons explained below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts, taken from the Complaint, are assumed to be true for the purposes of this motion. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001). Cold-EEZE are homeopathic, over-the-counter cold remedy products that are manufactured and distributed by Prophase. (Am. Compl. (Docket No. 17) ¶¶ 1, 11). Although Cold-EEZE are sold in various

forms (including lozenges, oral sprays, and "Quick-Melts"), they are all "essentially the same product." (*Id.* ¶¶ 1, 14). Defendants market Cold-EEZE as alleviating cold symptoms. Each product's label, for example, states that Cold-EEZE "reduce the duration of the common cold" and "reduce the severity of cold symptoms." (*Id.* ¶ 16). Similarly, the packaging of Cold-EEZE Lozenges states that they are "[c]linically proven to reduce the duration of the common cold." (*Id.* ¶ 17). In addition, Karkus — Prophase's CEO — made personal guarantees of the efficacy of Cold-EEZE in treating cold symptoms. Several of the Cold-EEZE products contained an insert from Karkus promising that "Cold-EEZE is the right remedy to shorten your cold" (*id.* ¶¶ 21-22), and packages of Cold-EEZE Lozenges contained an insert from Karkus stating that they are "clinically proven to shorten your cold by almost half." (*Id.* ¶ 20). Karkus also made similar claims in national television advertisements for Cold-EEZE. (*Id.* ¶ 25).

Plaintiffs Weisblum and Gibbs both purchased Cold-EEZE. Weisblum purchased Cold-EEZE Lozenges in New York in January 2014 after he "heard Defendants' media advertisements and reviewed the product's packaging and labeling." (*Id.* ¶ 9). Specifically, he read on the package that Cold-EEZE are "clinically proven" to reduce the severity and duration of the common cold and that they would reduce the severity of his cold symptoms. (*Id.*). He would not have purchased Cold-EEZE in the absence of such representations. (*Id.*). Gibbs purchased Cold-EEZE Lozenges in California in January 2013. (*Id.* ¶ 10). He too reviewed the lozenges' packaging before deciding to purchase them, and relied on the claims that Cold-EEZE would shorten and reduce the severity of his cold. (*Id.* ¶ 10). Like Weisblum, Gibbs would not have purchased Cold-EEZE absent these representations. (*Id.*).

Weisblum filed this lawsuit on behalf of himself and others similarly situated on May 19, 2014, and Gibbs was added as a named plaintiff in the Amended Complaint on August 4, 2014.

(Docket Nos. 1, 17).  Put simply, Plaintiffs allege that Defendants' representations about the effectiveness of Cold-EEZE are false.  According to the Complaint, clinical studies have found that Cold-EEZE are ineffective in treating cold symptoms, and studies that have found otherwise are biased and "fundamentally flawed."  (Am. Compl. ¶¶ 26-28, 30-36).  The Complaint alleges violations of New York and California consumer protection laws (*id.* ¶¶ 49-67, 92-137), violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et. seq* (*id.* ¶¶68-78), breach of express and implied warranties (*id.* ¶¶ 79-91), unjust enrichment (*id.* ¶¶ 138-43), and fraud (*id.* ¶¶ 144-57).  Defendants move to dismiss the Complaint in its entirety.

## DISCUSSION

As noted, Defendants move to dismiss on several grounds.  First, they move, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss all of Gibbs's claims against Prophase (but not Karkus) for lack of personal jurisdiction.  (Defs.' Mem. Law Supp. Mot. To Dismiss Pls.' First Am. Class Action Compl. (Docket No. 35) ("Defs.' Mem.")  3-7).  Second, they move, presumably pursuant to Rule 12(b)(1), to dismiss claims as to Cold-EEZE products other than lozenges on the ground that Plaintiffs lack standing to bring those claims.  (*Id.* at 8-10).  Finally, they move, pursuant to Rule 12(b)(6), to dismiss all counts for failure to state a claim.  (*Id.* at 10-19).  The Court will address each argument in turn.

**A.     Personal Jurisdiction With Respect to Gibbs's Claims Against Prophase**

Defendants argue first that the Court lacks personal jurisdiction with respect to Gibbs's claims (the "California claims") against Prophase.  As the Second Circuit recently explained, there are "two categories of personal jurisdiction: general and specific personal jurisdiction. General, all-purpose jurisdiction permits a court to hear any and all claims against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise

out of or relate to the entity's contacts with the forum." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks, citations and footnote omitted). The plaintiff bears the burden of establishing personal jurisdiction. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "'Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations.'" *Id.* (quoting *Ball*, 902 F.2d at 197).

In this case, Plaintiffs do not (and could not) argue that there is specific personal jurisdiction over the California claims against Prophase. (*See, e.g.*, Pls.' Opp'n Defs. Mot. To Dismiss (Docket No. 39) ("Pls.' Mem.") 3-7). Instead, they argue in the first instance that Defendants forfeited any objection to the Court's exercise of general personal jurisdiction with regard to the California claims by answering Plaintiffs' original Complaint without raising a personal jurisdiction defense and by "substantially participating in this action." (*Id.* 3-4). Those arguments are without merit. Because the original Complaint asserted claims only on behalf of New York plaintiffs (Class Action Compl. ("Original Compl.") (Docket No. 2) ¶ 9), Prophase had no reason to object to the Court's exercise of personal jurisdiction. And, in any event, Prophase did object: In its answer to the original Complaint, Prophase admitted that its products were sold in New York, but it "denie[d]" the remaining jurisdictional allegations. (Answer (Docket No. 10) ¶ 7). As for Prophase's participation in the litigation to date, forfeiture is

4

appropriate "only if the party waited years before moving or engaged in substantial pre-trial activity." *Infinity Consulting Grp., LLC v. Am. Cybersys., Inc.*, No. 09-CV-1744 (JS) (WDW), 2010 WL 2267470, at *2 (E.D.N.Y. May 30, 2010).  Here, as Prophase points out in its reply memorandum of law, Prophase took at least some actions pursuant to the Federal Rules of Civil Procedure and orders of the Court.  (Defs.' Reply Mem. Law Further Supp. Mot. To Dismiss Pls.' First Am. Class Action Compl. ("Defs.' Reply") (Docket No. 40) 2 (citing Fed. R. Civ. P. 26(f)(1) and Docket No. 28)).  Thus, it "would be highly inequitable to conclude that [Prophase] waived its personal jurisdiction claim" on that basis.  *M&D Inf. Sys., Inc., v. Tower Grp., Inc.*, No. 05-CV-552 (PCD), 2006 WL 752880, at *7 (D. Conn. Mar. 21, 2006).

Turning to the merits, Plaintiffs fail to show that the Court has general personal jurisdiction over Prophase.[1]  Under New York Law, which applies here, *see, e.g.*, *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006), a foreign corporation is subject to New York's general personal jurisdiction if it is "present" and "doing business" in the state, *see, e.g.*, *Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88, 95 (2d Cir. 2000).  To meet that standard, "a plaintiff must show that a defendant engaged in continuous, permanent, and substantial activity in New York." *Id.* (internal quotation marks omitted).  Several courts in this Circuit have noted that "it is unclear whether existing New York general jurisdiction jurisprudence remains viable" after the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  *See, e.g.*, *Reich v. Lopez*, — F. Supp. 2d —,  No. 13-CV-5307 (JPO), 2014 WL 4067179, at *12 (S.D.N.Y. Aug. 18, 2014); *Meyer v. Bd. of Regents of Univ. of Okla.*, No. 13-CV-3128 (CM),

---

[1]     Although there might be an argument that the Court has pendent personal jurisdiction over Prophase on the California claims, *see, e.g.*, *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 718-720 (2d Cir. 1980); *Long v. Parry*, 921 F. Supp. 2d 269, 273 (D. Vt. 2013), Plaintiffs do not invoke pendent personal jurisdiction in their memorandum of law.  Accordingly, they have forfeited any argument that that doctrine applies.

2014 WL 2039654, at *4 (S.D.N.Y. May 14, 2014); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir. 2014).  The Court need not decide that question, however, because even if the Court's exercise of personal jurisdiction would comply with New York's long-arm statute, it would not comply with the requirements of due process.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

The due process analysis "consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012).  The minimum contacts test asks whether a defendant has engaged in "purposeful availment" — that is, whether the contacts indicate the defendant's intent to invoke the benefits and privileges of New York law.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-75 (1985).  The second part of the due process analysis asks "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice — that is, whether it is reasonable under the circumstances of the particular case."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (internal quotation marks omitted).  Further, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them [only] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  A corporation is generally considered to be "at home" only in in the states where it is incorporated and where it has its principal place of business.  Nevertheless, "in an exceptional case," it may be considered at home elsewhere.  *Daimler AG*, 134 S. Ct. at 760, 761 n.19.

As Prophase is a Nevada corporation with its headquarters in Pennsylvania (Am. Compl. ¶ 11), the Court may exercise general personal jurisdiction here only if this is an "exceptional case." *Daimler AG*, 134 S. Ct. at 761 n.19. It is not. The only alleged contact between Prophase and New York is that the company "market[s] and sell[s] . . . Cold-EEZE Products" throughout the state. (Pls.' Mem. 7; *see also* Decl. Robert Cuddihy, Jr. Supp. Defs.' Mot. To Dismiss (Docket No. 36) ("Cuddihy Decl.") ¶ 8). Prophase does not have any real estate or employees in New York. (*Id.* ¶¶ 4, 6). Nor does it manufacture its products in New York. (*Id.* ¶ 7). Indeed, Prophase does not even have a phone number or mailing address in the state. (*Id.* ¶ 5). The mere fact that Prophase sells its products in New York does not suffice to show that Prophase's contacts with New York are "so substantial and of such a nature as to render the corporation at home" here. *Daimler AG*, 134 S. Ct. at 761 n.19; *see, e.g.*, *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 40 (2d Cir. 2014) (holding that the Diocese was not subject to general personal jurisdiction in Vermont because it "operates no office or facility in Vermont, has no sales in the forum, and the percentage of its contacts with Vermont compared to its activities elsewhere . . . are trivial"); *Reich*, 2014 WL 4067179, at * 12 (finding no personal jurisdiction in New York even though the defendants owned property there, used New York banks, travelled to New York frequently and retained a New York law firm).

Accordingly, Plaintiffs fail to carry their burden of showing personal jurisdiction over Prophase with respect to the California claims. Nor is there any merit to their alternative request for jurisdictional discovery. (Pls.' Mem. 5). Although "district courts enjoy broad discretion in deciding whether to order [jurisdictional] discovery," *Reich*, 2014 WL 4067179, at *16 (internal quotation marks omitted), a plaintiff "may not make conclusory non-fact-specific jurisdictional allegations against foreign defendants and thus obtain extensive discovery on that issue,"

*NovelAire Technologies, LLC v. Munters AB*, No. 13-CV-472 (CM), 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) (internal quotation marks omitted); *see also Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the Jazinis did not establish a prima facie case that the district court had jurisdiction over Nissan Japan, the district court did not err in denying discovery on that issue."). That is all Plaintiffs offer here. (*See* Am. Compl. ¶ 7; Pls.' Mem. 5).

That Plaintiffs find Prophase's position "baffling" is of no moment. (Pls.' Mem. 7). It is true that Gibbs may refile his claims against Prophase in a separate action in California, and that the result of Prophase "prevailing" here is that it may have to defend against two substantially similar lawsuits in two different courts. Prophase could have avoided that risk by waiving personal jurisdiction and consenting to proceed with respect to Gibbs's claim in this District. *See, e.g.*, *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) ("It is well established that a party can waive its right to challenge the district court's personal jurisdiction over it."). But the Court cannot override Prophase's objections in the name of "judicial efficiency" (Pl.'s Mem. 7), and is thus compelled to grant Prophase's motion. Accordingly, Counts 6, 8, 9, 10, and 11 must be and are dismissed against Prophase in their entirety, and Counts 3, 4, 5, 12, 13, and 14 must be and are dismissed against Prophase to the extent they are brought by Gibbs. That leaves Gibbs's claims against Karkus and Weisblum's claims against both Defendants, to which the Court now turns.

**B.** **Plaintiffs' Standing With Respect to Cold-EEZE Products Other than Lozenges**

Next, citing the fact that Weisblum and Gibbs purchased only Cold-EEZE lozenges (Am. Compl. ¶¶ 9-10), Defendants argue that Plaintiffs lack standing to assert claims, including claims on behalf of a putative class, for other Cold-EEZE products. (Defs.' Mem. 8-10). In response, Plaintiffs contend that that argument goes to whether they have *class* standing, not Article III

standing, and should thus be deferred to another day.  (Pls.' Mem. 7-10).  The Second Circuit has

recognized that "there is some 'tension' in [the Supreme Court's] case law as to whether

'variation' between (1) a named plaintiff's claims and (2) the claims of putative class members

'is a matter of article III standing . . . or whether it goes to the propriety of class certification.'"

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 160 (2d Cir. 2012)

(quoting *Gratz v. Bollinger*, 539 U.S. 244, 263 & n.15 (2003)).  The Circuit has held, however,

that Article III standing is satisfied for each named defendant as long as there is "at least one

named plaintiff who can assert a claim directly against that defendant."  *Id.* at 159 (internal

quotation marks omitted); *see also, e.g.*, *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-

MD-2413 (RRM) (RLM), 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) (quoting *Cent.*

*States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d

229, 241 (2d Cir. 2007)).  Because there is no dispute that that standard is met here, Plaintiffs'

claims on behalf of purchasers of other Cold-EEZE products can move forward.

　　　In arguing otherwise, Defendants cite cases from other Circuits, which are obviously not

binding on this Court.  In addition, Defendants rely heavily on the Second Circuit's unpublished

summary order in *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (summary

order), which held that the plaintiffs could not bring claims for products they did not purchase

because the alleged misrepresentations were not "nearly identical" to those made with regard to

products the plaintiffs did purchase.  That case, however, decided the question of *class* standing,

not Article III standing.  *See id.* ("Accordingly, Plaintiffs lack *class* standing to bring claims for

the four products that they did not purchase . . . ." (emphasis added)).  Further, far from changing

the law of the Circuit (which it could not do through a summary order, *see, e.g.*, *Lotes Co., Ltd.*

*v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 405 (2d Cir. 2014)), the panel expressly

"reiterate[d] the holding of *NECA-IBEW*." *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, — F. Supp. 2d —, No. 13-CV-4577 (KMK) (LMS), 2014 WL 3907995, at *4 n.6 (S.D.N.Y. Aug. 7, 2014).  Finally, even if Plaintiffs were required to allege "nearly identical" misrepresentations, they have done so: The Complaint states that the packaging of *all* Cold-EEZE products represents that Cold-EEZE "reduce the duration of the common cold" and the "severity of cold symptoms."  (Am. Compl. ¶ 16; *see also id.* ¶ 22-23, 25).  Those allegations suffice to establish standing at this stage in the litigation.

**C.      The Adequacy of Plaintiffs' Remaining Claims**

Finally, as noted, Defendants move to dismiss all of Plaintiffs' remaining claims, pursuant to Rule 12(b)(6), for failure to state a claim.  A Rule 12(b)(6) motion challenges the sufficiency of the allegations in the complaint.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  To survive such a motion, the complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

Here, Defendants seek to dismiss (1) Weisblum's claims under the New York General Business Law ("GBL") on the ground that they have not suffered any cognizable injury, (2) both Plaintiffs' claims under the Magnuson-Moss Warranty Act ("MMWA") for failure to meet that Act's jurisdictional requirements, (3) both Plaintiffs' express and implied warranty claims on the

ground that Plaintiffs were not in privity with Defendants, (4) Weisblum's unjust enrichment claim as duplicative, (5) both Plaintiffs' negligent and fraudulent misrepresentation claims under the economic loss doctrine, (6) and various claims brought by both Plaintiffs against Karkus for failure to plausibly allege reliance. The Court will address each argument in turn.

      **1.**     *New York General Business Law Sections 349 and 350 (Counts 1 and 2)*

First, Defendants move to dismiss Weisblum's claims under GBL Sections 349 and 350, which prohibit deceptive business practices and false advertising. (Defs.' Mem. 11-12). To state a *prima facie* claim under either Section, a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice. *See, e.g.*, *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009) (Section 349); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 450-51 (E.D.N.Y. 2007) (stating that the standards under Sections 349 and 350 are "substantively identical"). It is true, as Defendants argue, that "'consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices [have not] suffered an injury under General Business Law § 349.'" *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)). (Defs.' Mem. 11). At the same time, claims that "a plaintiff paid a premium for a product based on defendants' inaccurate representations" may go forward, *Ackerman v. Coca-Cola Co.*, No. 09-CV-395 (JG) (RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010); *see also Lorillard Tobacco Co.*, 94 N.Y.2d at 56 n.5 ("The Attorney General may be right that a plaintiff might have a claim for the higher price the consumer paid for the product as a result of the misrepresentation in that circumstance."), and that is what Weisblum alleges here. Specifically, the Complaint asserts that

Weisblum was "damaged in the amount of the purchase price of the Cold-EEZE Products, i.e., *the difference in value* between the Cold-EEZE Products as advertised and the Cold-EEZE Products as actually sold." (Am. Compl. ¶ 54 (emphasis added)).  Weisblum has therefore alleged that he paid a premium for Cold-EEZE, and his GBL claims survive.

### 2.    *The Magnuson-Moss Warranty Act (Count 3)*

Next, Defendants move to dismiss Plaintiffs' claims under the MMWA for lack of subject-matter jurisdiction.[2]  Defendants rely on Title 15, United States Code, Section 2310(d)(3), which provides that "[n]o claim shall be cognizable in a suit" brought by a consumer for a violation of the Act if "the amount in controversy of any individual claim is less than the sum or value of $25," the total "amount in controversy is less than the sum or value of $50,000" or "the action is brought as a class action, and the number of named plaintiffs is less than one hundred."  *See, e.g.*, *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 243-44 (2d Cir. 1986). Defendants argue that Plaintiffs' MMWA claims must be dismissed because the Complaint neither names one hundred plaintiffs nor states that any individual plaintiff is seeking more than $25. (Defs.' Mem. 12-13)  But Plaintiffs have not invoked the MMWA as a basis for the Court's *jurisdiction*.  Instead, Plaintiffs rely on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which" certain criteria are met.  *Id.* (Am. Compl. ¶ 6).  The question, then, is whether CAFA presents an alternative basis for jurisdiction over Plaintiffs' MMWA claims.

Courts have disagreed about the answer to that question — namely, about whether the MMWA's specific jurisdictional limitations trump CAFA's authorization of federal jurisdiction

---

[2]    Although Defendants cite Rule 12(b)(6) in doing so, the motion is more properly brought — and will be considered by the Court — under Rule 12(b)(1).

over otherwise qualifying class actions — but the vast majority of courts have held that, where

its conditions are met, CAFA provides an alternative basis for jurisdiction without regard for the

MMWA.  *Compare Ebin v. Kangadis Food Inc.*, No. 13-CV-2311 (JSR), 2013 WL 3936193, at

*1 (S.D.N.Y. July 26, 2013) (dismissing MMWA claims for lack of subject-matter jurisdiction

and holding that the argument that MMWA claims that do not satisfy that statute's requirements

may be brought pursuant to CAFA to be "flatly contradicted by the plain text of the MMWA"),

*with Kuns v. Ford Motor Co.*, 543 Fed. App'x 572, 574-75 (6th Cir. 2013) (unpublished

decision) (finding that courts have subject-matter jurisdiction under CAFA even when the

plaintiffs cannot not satisfy the MMWA); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th

Cir. 2009) (same); *In re Sony Vaio Computer Notebook Trackpad Litig.*, No. 09-CV-2109 (BEN)

(RBB), 2010 WL 4262191, at *4 (S.D. Cal. Oct. 28, 2010) (same and collecting cases); *Chavis v.

Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006) (same).  The Court agrees

with the weight of authority, and finds that Plaintiffs' MMWA claims may go forward.

First and foremost, as several courts have pointed out, *see, e.g.*, *Chavis*, 415 F. Supp. 2d

at 626, CAFA's grant of jurisdiction over qualifying class actions is quite broad.  It provides

district courts with original jurisdiction over "*any* civil action" that both satisfies the amount in

controversy requirement and "is a class action," as long as certain specified other criteria are

met.  28 U.S.C. § 1332(d)(2) (emphasis added).  In turn, "class action" is expansively defined as

"*any* civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State

statute or rule of judicial procedure authorizing an action to be brought by 1 or more

representative persons as a class action."  *Id.* § 1332(d)(1)(B) (emphasis added).  On its face,

then, the plain text of CAFA seems to authorize suits like the one here.  That conclusion is

reinforced by the fact that CAFA contains several enumerated exceptions, including the "local

controversy" exception, *see id.* § 1332(d)(3), and the "home state exception," *see id.*
§ 1332(d)(4)(B).  In fact, Congress went so far as to identify claims brought pursuant to specific
statutory provisions — namely sections of the Securities Act of 1933 and the Securities
Exchange Act of 1934 — to which CAFA does not apply.  *See id.* § 1332(d)(9)(a), (c).  CAFA
does not, however, carve out the MMWA.  Nor does it contain language (as the supplemental
jurisdiction statute does, *see* 28 U.S.C. § 1367) to the effect that it applies "except . . . as
provided otherwise by Federal statute."  The Court may not assume that those omissions were
"accidental," *United States v. Jaffe*, 314 F. Supp. 2d 216, 224 (S.D.N.Y. 2004), and must
"assume that Congress is aware of existing law when it passes legislation," *Hall v. United States*,
132 S. Ct. 1882, 1889 (2012) (internal quotation marks omitted).  Moreover, "[t]he ancient
maxim *expression unius est exclusio alterius* (mention of one impliedly excludes others) cautions
[the Court] against engrafting an additional exception to what is an already complex statute."
*Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011) (internal quotation marks omitted).
Accordingly, and given the plain language of CAFA, there is no basis to read an MMWA
exception into CAFA that Congress itself chose not to include.

Notably, interpreting CAFA to allow plaintiffs to bring class actions alleging violations
of the MMWA, even when they cannot satisfy the MMWA's jurisdictional limits, furthers the
purpose of CAFA without undermining the purposes of the MMWA's jurisdictional limitations.
It is well established that "CAFA was passed with the clear intention of expanding 'federal court
jurisdiction over class actions.'" *Chavis*, 415 F. Supp. 2d at 626 (quoting S. Rep. No. 109-14 at
42 (2005)).  It is also well established that the MMWA's jurisdictional provisions were intended
"(1) to avoid trivial or minor actions being brought as class actions in the federal district courts;
and, (2) to overcome the absence of an amount in controversy requirement."  *Id.* at 622 (internal

quotation marks omitted); *see also Dance v. U.S. Int'l Motors*, 647 F. Supp. 1205, 1207 (D.D.C. 1986) (same).  Treating CAFA as an alternative basis for jurisdiction is consistent with the goal of expanding federal court jurisdiction over significant class actions, but CAFA's own limitations — including its amount-in-controversy requirement, its required minimum number of class members, and the local controversy and home state exceptions — ensure that trivial and minor actions still cannot be brought as class actions in federal courts.  To be sure, CAFA slightly altered the balance that Congress previously struck between federal and state jurisdiction in the MMWA.  But it did not do so radically and, in any event, it is not the Court's role to second guess the balance that Congress chooses to strike on that score.

Nor is the Court's conclusion contrary to the general rule of construction that "general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction."  *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005); *see also Radzanowec v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.").  To be sure, the MMWA qualifies as a "specific statute."  But CAFA itself is not a general jurisdictional statute akin to the statutes providing jurisdiction over all cases "arising under" the laws of the United States, *see* 28 U.S.C. § 1331, or in which the matter in controversy is over $75,000 and there is a diversity of citizenship, *see* 28 U.S.C. § 1332(a).  Instead, it pertains only to a narrow and carefully delineated set of class actions in which the amount of controversy is more than $5,000,000, and any member of the class (1) "is a citizen of a State different from any defendant," (2) "is a foreign state or a citizen or subject of a foreign state and the defendant is a citizen of a State," or (3) "is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign

state." 28 U.S.C. § 1332(d)(2).  Further, as discussed above, it includes several enumerated

exceptions that are, themselves, carefully delineated.  *See id.* §§ 1332(d)(4), (d)(5), (d)(9).

CAFA, therefore, "is just as specific with respect to actions within its scope" as is the MMWA,

*In re Global Cross, Ltd. Sec. Litig.*, No. 02-CV-910 (GEL), 2003 WL 21659360, at *2 (S.D.N.Y.

July 15, 2003), and the rule that the specific governs over the general does not apply.

In short, consistent with every Court of Appeals to address the issue and the vast majority

of district courts, the Court holds that where, as here, the jurisdictional prerequisites of CAFA

are satisfied, it may exercise subject-matter jurisdiction over a claim under the MMWA without

regard for whether the jurisdictional prerequisites of that statute are also met.  Accordingly,

Defendants' motion to dismiss Plaintiffs' claims under the MMWA must be denied.

### 3.    *Express and Implied Warranty (Counts 4 and 5)*

Next, Defendants ask the Court to dismiss Plaintiffs' express and implied warranty

claims (brought under both New York and California law) because Plaintiffs do not allege that

they were in privity with either Prophase or Karkus.  (Defs.' Mem. 13-14).  There is no merit to

that argument with respect to the California claims, as privity is not required under California

law for either breach of warranty claims where, as here, "the plaintiff relies on written labels or

advertisements of a manufacturer," *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th

Cir. 2008) (implied warranty); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1141 (N.D. Cal. 2010)

(similar with respect to express warranties), or implied warranty claims involving food products,

*see, e.g.*, *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 (N.D. Cal. 2014).  Defendants'

arguments with respect to Weisblum's express warranty claims under New York law also fail, as

courts have held that a plaintiff need not be in privity with a defendant to bring such a claim

based on misrepresentations contained in "public advertising or sales literature." *Prue v. Fiber*

*Composites, LLC*, No. 11-CV-3304 (ERK) (LB), 2012 WL 1314114, at *9 (E.D.N.Y. Apr. 17, 2012) (internal quotation marks omitted) (citing cases); *see, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos.*, No. 13-CV-3073 (NSR), 2014 WL 1285137, at *12 (S.D.N.Y. Mar. 27, 2014) ("A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements." (internal quotation marks omitted)); *Murrin v. Ford Motor Co.*, 756 N.Y.S.2d 596, 597 (App. Div. 2d Dep't 2003).[3]

Weisblum's claims under New York law for breach of an implied warranty are a different matter, however.  The law is clear that, "absent any privity of contract between Plaintiff and Defendant, such claim cannot be sustained as a matter of law except to recover for personal injuries."  *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 108 (W.D.N.Y. 2011); *see also Freidman v. Gen. Motors Corp.*, No. 08-CV-2458 (SAS), 2009 WL 454252, at *2 (S.D.N.Y. Feb. 23, 2009) (same).  Plaintiffs do not allege privity or argue that the personal injury exception applies here, but rather cite several cases holding that privity is not required with regard to implied warranty claims "concerning sealed food products or medicines."  (Pls.' Mem. 15-16 (citing, *e.g.*, *Addeo v. Metro Bottling Co.*, 39 Misc. 2d 474, 476 (N.Y. App. Div. 1st Dep't 1963)).  Those cases, however, "preceded the enactment of the UCC, which displaced [them]."  *Ebin*, 2013 WL 6504547, at *6.  Accordingly, Weisblum's claims brought on behalf of the putative New York subclass for breach of implied warranty are dismissed.

---

[3]     The Court declines to rely on *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014), and *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311 (JSR), 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013), cited by Defendants.  (Defs.' Mem.13-14).  To be sure, those cases involved claims much like the one here, and the courts applied a privity requirement.  But neither court acknowledged the exception for representations made in advertising and sales literature (perhaps because the plaintiffs in those cases did not rely on it).

### 4.    *Unjust Enrichment (Count 12)*

Defendants also seek to dismiss Weisblum's claims brought under New York law for unjust enrichment on the grounds that it is duplicative of his contract and tort claims.  (Defs.' Mem. 14-15).[4]  Under New York law, an unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008).  Plaintiffs argue that New York courts allow unjust enrichment claims to be pleaded in the alternative.  They cite *Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100 (N.Y. App. Div. 1st Dep't 2010), which held that an unjust enrichment claim is not duplicative of a contract claim when the contract was induced by fraud.  (Pls.' Mem. 16). *Abaplus*, however, predates *Corsello*'s holding that an unjust enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or *tort* claim."  *Corsello*, 18 N.Y.3d at 790 (emphasis added).  Accordingly, and because Weisblum has not shown that his unjust enrichment claim differs from his contract and tort claims, it must be dismissed.

### 5.    *Negligent Misrepresentation and Fraud Claims (Counts 13 and 14)*

Defendants move to dismiss Plaintiffs' negligent misrepresentation and fraud claims on the basis of the economic loss doctrine.  Under that doctrine, a plaintiff who has "suffered

---

[4]    Although Defendants do not explicitly state that they are challenging only the New York unjust enrichment claims, they cite only New York law and make no specific reference to the California claims.  (Defs.' Mem. 14-15; Defs.' Reply 7).  Thus, Defendants have forfeited any challenge to the unjust enrichment claims brought against Karkus under California law.  *See Phlo Corp. v. Stevens*, 62 F. App'x 377, 382 (2d Cir. 2003) (unpublished decision) (deeming an argument waived where the plaintiff "cite[d] no cases" and made "only the briefest of speculative references to the question"); *see also Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) ("It is well established that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

economic loss, but not personal or property injury," may not recover in tort "[i]f the damages are the type remedial in contract."  *Dervin Corp. v. Banco Bilbao Vizcava Argentaria, S.A.*, No. 03-CV-9141 (PKL), 2004 WL 1933621, at *6 n.3 (S.D.N.Y. Aug. 30, 2004) (internal quotation marks omitted); *see also Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F. Supp. 2d 983, 991 (E.D. Cal. 2012) ("Under California law, the economic loss doctrine requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." (internal quotation marks omitted)).  Under New York law, the doctrine applies to claims for negligent misrepresentation, barring Plaintiffs' New York negligent misrepresentation claims.  *See, e.g.*, *Manhatten Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007); *see also Computech Intern., Inc. v. Compaq Computer Corp.*, No. 02-CV-2628 (RWS), 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004) ("[T]he general rule under New York law is that economic loss is not recoverable under a theory of negligence or strict liability." (internal quotation marks omitted)).  Similarly, because Plaintiffs have not alleged that Defendants' misrepresentations caused them harm other than that arising out of their contract claims, their negligent misrepresentation claims brought under California law must also be dismissed.  *See, e.g.*, *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,  No. 11-CV-246 (IEG) (RBB), 2012 WL 404775, at *7 (S.D. Cal. Feb. 8, 2012).

Plaintiffs' fraud claims, however, are not barred by the economic loss doctrine.  Courts applying both New York and California law have allowed intentional misrepresentation claims to proceed, notwithstanding the economic loss rule.  *See, e.g.*, *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1032-33 (E.D. Cal. 2013) (declining to apply the economic loss rule to a case alleging intentional fraud and noting that "the economic loss rule is designed to limit

liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk" (internal quotation marks omitted)); *accord Dervin Corp.*, 2004 WL 1933621, at *6 n.3.  Defendants cite *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 226 n.2 (S.D.N.Y. 2001), which stated, without discussion or citation, that New York courts have not adopted an exception to the economic loss rule for intentional torts.  (Defs.' Mem. 15-16).  Other courts in this Circuit, however, have disagreed.  *See, e.g.*, *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 278 (S.D.N.Y. 2004) (noting that the Court was not aware of any cases where New York courts applied the economic loss doctrine to fraud claims); *Computech Int'l*, 2004 WL 1126320, at *10 ("In the absence of any articulation to the contrary by the New York courts, the economic loss doctrine will not be presumed to extend to fraud claims.").  In light of those cases, and the absence of any contrary authority from the New York state courts, the Court declines to dismiss Plaintiffs' fraud claims on the basis of the economic loss doctrine.

Nor is there merit to Defendants' alternative argument that the fraud claims should be dismissed because Plaintiffs have not alleged that Defendants owed them a duty "separate and apart from the contractual duties purportedly imposed on Defendants under the law of warranty." (Defs.' Mem. 16).  To maintain a claim of fraud, a plaintiff may "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996).  Further, "it is well established that a misrepresentation of present fact which is the inducement for a contract . . . can support a separate fraud claim." *EED Holdings*, 387 F. Supp. 2d at 279; *see also StreamCast Networks, Inc. v. IBIS LLC*, No. 05-CV-4239 (MMM), 2006 WL 5720345, at *10 (C.D. Cal. May 2, 2006) ("One circumstance in which courts have routinely recognized the availability of both a fraud

and a contract action is a case in which a party contends that it was fraudulently induced to enter

into a contract.").  In this case, Plaintiffs allege that Prophase and Karkus made

misrepresentations about Cold-EEZE and that those misrepresentations induced them to purchase

the products.  (Am. Compl. ¶¶ 9-10, 14-25).  Those allegations suffice for now.

### 6.     *Claims Against Karkus*

Finally, Defendants seek to dismiss the remaining claims against Karkus — for (1)

breach of express warranty, (2) fraud, (3) violations of California's Consumer Legal Remedies

Act (CCLRA), (4) violations of California's False Advertising Law, (5) violations of California's

Unfair Competition Law, and (6) violations of the GBL — on the ground that Plaintiffs could not

have relied on Karkus's personal guarantees and that Karkus did not receive adequate notice of

Gibbs's CCLRA claims.  (Defs.' Mem. 17-20).  With respect to the issue of reliance, the

Complaint alleges as to Weisblum that (1) Karkus made personal guarantees in national media

advertisements (Am. Compl. ¶ 25); (2) Weisblum heard "Defendants' media advertisements" (*id.*

¶ 9); and (3) Weisblum "relied on these representations in deciding to purchase the Cold-EEZE

products" (*id.*).  Taken together, those allegations suffice — even under the heightened pleading

standards of Rule 9(b) of the Federal Rules of Civil Procedure that apply to some (but not all) of

the relevant claims — to show that Weisblum relied on Karkus's oral guarantees and that his

allegedly material deceptive acts caused Weisblum injury.  As for Gibbs, the Complaint alleges

that he viewed an insert containing statements by Karkus "prior to and at the time of purchase"

and that he relied on the statements therein when deciding to purchase Cold-EEZE.  (*Id.* ¶ 10).

Defendants raise colorable questions about the credibility of those allegations insofar as the

insert containing Karkus's statements was *inside* the package (Defs.' Mem. 18), but the Court is

required to assume the truth of the allegations at this stage of the litigation.  *See, e.g.*, *Kalnit*, 264

F.3d at 135.  And assuming their truth, the allegations are sufficiently plausible and specific to survive scrutiny under either Rule 8 or Rule 9(b) of the Federal Rules of Civil Procedure.

As for Defendants' notice argument, the CCLRA mandates that "[t]hirty days or more prior to the commencement of an action for damages . . . the consumer shall . . . [n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770."  Cal. Civ. Code. § 1782(a). Defendants claim — without citing any cases — that the notice that Gibbs provided, which mentions "the packaging and labeling" of Cold-EEZE products but not the Karkus insert (Am. Compl. Ex. B ("Notice"), at 1), was insufficient to make Karkus aware that claims would be asserted against him personally.  (Def.'s Mem. 19-20).  The purpose of the notice requirement, however, is to "give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements."  *Stickrath v. Glboalstar, Inc.*, 527 F. Supp. 2d 992, 1001 (N.D. Cal. 2007) (internal quotation marks omitted); *see also Seifi v. Mercedes-Benz USA, LLC*, No. 12-CV-5493 (TEH), 2013 WL 5568449, at *8-9 (N.D. Cal. Oct. 9, 2013) (similar). Here, although Gibbs's notice did not specifically mention the insert, it did state that Karkus's "conduct with respect to the promotion and marketing of Cold-EEZE Cold Remedy products is false and misleading," including "representing that the Cold-EEZE Products are 'clinically proven to reduce the duration of the common cold.'"  (Notice 1-2).  Further, while the letter was addressed "to whom it may concern," the letter's heading lists both ProPhase and Karkus. (Notice 1).  Thus, the Court finds that the notice adequately informed Karkus of the claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically, Counts 1 (GBL § 349) and 2 (GBL § 350) survive in their

22

entirety.  The California claims against Prophase included in Counts 3 (MMWA), 4 (express

warranty), 6 (CCLRA), and 14 (fraud) are dismissed, but the New York claims and the

California claims against Karkus survive.  The New York claims and the California claims

against Prophase included in Counts 5 (implied warranty) and 12 (unjust enrichment) are

dismissed, but the California claims against Karkus survive.  Finally, Counts 8 (FAL), 9-11

(UCL), and 13 (negligent misrepresentation) are dismissed in their entirety.[5]

The Clerk of Court is directed to terminate Docket No. 34.


SO ORDERED.

Date:   February 20, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[5]      The Complaint does not contain a Count 7.